Reese, J.
delivered the opinion of the court.
The plaintiff in error was indicted for a felony in passing and offering to pass a counterfeit Mexican dollar. The defendant below elected as one of the jury an individual, who, it seems from the affidavits, made to procure a new trial after his conviction, was of intemperate habits. The general state of these habits was known'to defendant and his counsel, but the latter did not know, and it does not appear that the former knew, that these habits had frequently produced the bodily and mental disease called delirium tremens, or mania a potu. It appears from the affidavits referred to, that during the investigation of the cause in court, the manner of the juror indicated him to be in a state of dull and stupid abstraction. At night the jury were taken in care of an officer to some room in town to consider of their verdict and to be kept together. About eleven o’clock at night, the juror *60 became much indisposed, and was threatened with spasm and on the verge of an attack of delirium tremens.
The physician who usually attended him on such occasions, was sent for; and he testifies, that. from the condition in which he found his patient, and from the knowledge he had of his case in general, and from attendance on him during former attacks, that he would not have been, during the investigation of the cause in court, in a condition to have possessed himself intelligently, of the facts and circumstances of the case, so as to have performed in a rational manner the duties of a juror. In the morning the juror continued dull and stupid, but on taking a draught of ardent spirits and breakfasting, he seemed pretty well. Some of the jury testified that he manifested more intelligence than they had expected in discussing with them the testimony; but whether his knowledge in this respect was the result of attention in court or was picked up in the jury room, they did not know. It does not appear that before the verdict was given, the prisoner or his counsel knew of the condition of the juror during the preceding night. Upon the whole case, we think, the prisoner is entitled to a new trial; not on the ground that the juror may have been under the influence of ardent spirits as stated by one of the witnesses, when he first entered the jury box, or that he took a draught of ardent spirits on the morning the verdict was rendered; nor on the ground of the slight separation of the jury, which became necessary when the physician visited the juror; when we think it is shown nothing improper took place; but upon the ground that it is probable that during the investigation of the cause in court and the deliberations of the jury upon their verdict, the juror in question was not in a state of mental and bodily health, enabling him to perform his duties intelligently; and that this fact was unknown to the court, to the counsel on both sides and to the prisoner, until after the verdict.
Let a new trial be had in this case.